UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | CRIM NO. 16-533 |
| v. | : | **OPINION** |
| RODNEY WALL, | : | |
| *Defendant.* | : | |

This matter comes before the Court on Defendant Rodney Wall's Motion, for Companionate Release under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i). [Dkt. No. 26]. Wall files this motion with the benefit of counsel, Thomas Young, Assistant Federal Public Defender. The Court has considered the parties' written submissions, and for the reasons stated below, will deny Defendant Wall's Motion.

Rodney Wall ("Wall") conspired with others to distribute and possess a detectable amount of cocaine base, a Schedule II controlled substance between May 2014 to September 2015. (*See* Judgement of Conviction). During a hearing on November 23, 2016, Defendant Wall plead guilty to a single-count of distributing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 84l(a)(1) and 841(b)(l)(C) and 21 U.S.C. § 846. Defendant Wall's advisory Guidelines Range was calculated as 151 to 188 months' imprisonment. (*See* Presentence Investigation Report ("PSR") ¶ 232).[1] He was sentenced on May 4, 2017 to 100 months imprisonment and 3 years of supervised release; his sentence represented a downward variance.

---

[1] Defendant Wall's criminal history includes numerous drug violations, *inter alia*, four previous convictions for manufacturing, distributing and dispensing a controlled dangerous substance. (*See* PSR ¶¶ 180, 187, 188, 189).

At the time of the filing of this motion, Defendant Wall was housed at FCI Ft. Dix; he has since been transferred by the Bureau of Prisons (BOP) to the Kintock Residential Facility located at 4 South Industrial Blvd, Bridgeton, NJ 08302. The Kintock facility is commonly known as a halfway house. Counsel describes Defendant Wall's current housing as akin to barracks-style living with eight men in the room where he sleeps. More than half of the men have the privilege of leaving the facility for work, which Defendant Wall argues increases his risk of exposure to the Covid-19 virus. The Kintock Residents are not tested for the virus unless they exhibit symptoms. Defendant Wall claims that he has already been exposed to an individual who tested positive, but there is no evidence that this exposure resulted in transmission of the virus.

Defendant Wall argues that he is eligible for compassionate release because of his Body Mass Index (BMI) and asthma. During Wall's medical examination in July of 2020, he weighed 225 pounds and was 72 inches tall. (*See* Medical Records [Dkt. No. 26-1]). According to the CDC, Defendant Wall's measurements place him within the category of obese, with a BMI index of 30.512, and makes him eligible for compassionate release. There are no medical records to confirm that Defendant Wall currently suffers from asthma, but counsel avers that Wall's family corroborated that he has asthma since childhood in a telephone interview. (*See* Petitioner's Br., P.1, n.2)

Defendant Wall also argues that despite his criminal history he is a non-violent offender and that he has completed the in-person portion of his Residential Drug Abuse Program. He has also earned the privilege of leaving the halfway house and was compliant during a period of home detention to quarantine after a Covid-19 exposure. In addition, Defendant Wall has served the bulk of his sentence and has a projected release date of October 9, 2021, with supervision commencing.

The Government opposes the motion in part because Defendant Wall's medical conditions are not compelling. Under the CDC Guidelines, Defendant Wall is slightly obese. In addition, to the extent he has asthma, courts in this district have declined to extend immediate release for this ailment. The gravamen of the Government's opposition is predicated upon the 18 U.S.C. § 3553(a) factors because Wall received a substantial variance at sentencing and has a very substantial criminal history. For these reasons, the Government argues that Wall has failed to show an "extraordinary and compelling reason" for release.

## I. Legal Framework

Generally, a district court may not modify a term of imprisonment once it has been imposed, unless the case falls under one of the limited exceptions under the First Step Act ("the Act"). Pursuant to the Act, a court may modify an imposed term of imprisonment—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

>> 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c).

The Sentencing Commission issued a policy statement concerning reduction in term of imprisonment under the Act, which provides in pertinent part, that after considering applicable factors set forth in 18 U.S.C. § 3553(a), the "the court may reduce a term of imprisonment if the court determines that—Extraordinary and compelling reasons warrant the reduction . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S.S.G. 1B1.13. As set forth in the policy statement, a defendant's medical condition may qualify as an extraordinary and compelling reason, if the defendant is suffering from a terminal illness or the defendant is,

> (C) suffering from a serious physical or medical condition,
>
> (D) suffering from a serious functional or cognitive impairment, or
>
> (E) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* Additional circumstances that may qualify include, the age of the defendant, family circumstances, and other reasons. *Id.*

## II. Discussion

There is no dispute that Defendant Wall is eligible for this Court's consideration of his compassionate release motion as the Government does not contest the exhaustion of the statute's administrative requirement. 18 U.S.C. § 3582(c)(1)(A). Thus, the question before the Court is whether extraordinary and compelling reasons warrant release. The Court finds that Wall has failed to demonstrate extraordinary and compelling reasons for release.

At the outset, this Court acknowledges the seriousness of the COVID-19 virus generally, and the ongoing challenges at various detention facilities. Courts have recognized that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted). *See also COVID-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited January 4, 2021). However, despite the BOP's efforts, the spread of COVID-19 infections remains a concern.

Defendant Wall argues that these concerns may be heightened to some extent in his present housing because Kintock residents travel off campus for working opportunities. According to Defendant Wall, there are no measures in place to ensure that working residents are taking the necessary precautions to protect themselves while they are off campus. Defendant Wall claims that this factor plus the lack of regular testing should not be discounted because he is not in a prison setting.

The Court is sympathetic to the risks and challenges confronting Defendant Wall and all inmates at detention centers. But nothing about Defendant Wall's housing

circumstances warrants release. As one court has summarized this Court's predicament, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) (footnote omitted). Instead, the Court must determine whether Defendant Wall's health or medical conditions present an extraordinary and compelling reason for reducing Defendant Wall's sentence. *See United States v. Hynes*, No. 3:18-CR-00222, 2020 WL 6060984, at *3 (D.N.J. Oct. 14, 2020).

In making this determination, courts look to those conditions the CDC has identified as "high-risk" factors. *See, e.g.*, *United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *4 (D.N.J. May 29, 2020). Defendant Wall exhibits obesity and therefore has an increased risk of severe illness from the COVID-19 virus. *See* Centers for Disease Control, At Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified December 1, 2020). However, Defendant Wall's BMI falls just within the minimum threshold for obesity.[2]

Wall also argues that he suffers from asthma and offers testimony from family, but no medical records. The Court is sympathetic to the Defendant Wall's circumstances, but "general allegations of medical condition[s], without the necessary specificity, are insufficient to establish the rare circumstances that would justify a grant

---

[2] The CDC defines obesity as a BMI of between 30 and 40, and severe obesity as a BMI exceeding 40. Wall's BMI is 30.51. *See* People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 4, 2021) ("CDC Certain Medical Conditions").

of compassionate release." *United States v. Carazolez*, Crim. No. 18-0081, 2020 WL 5406161, at *4 (D.N.J. Sept. 9, 2020).

Moreover, while the CDC has found that certain respiratory conditions—such as emphysema and asthma—may increase the risk of severe illness from COVID-19, *see* CDC Certain Medical Conditions, Defendant Wall has not presented sufficient evidence that he currently suffers from asthma. *See United States v. Coles*, 455 F. Supp. 3d 419, 425 (E.D. Mich. 2020) (denying compassionate release request where defendant provided no evidence to support his claim that he "suffers from asthma"). The Court will consider his family's testimony that Defendant Wall suffered from asthma but there is no evidence that his ailment presents a "high risk" factor warranting release. On balance, Defendant Wall's circumstances do not warrant release.

The Court's decision finds ample support in this District, where there are numerous courts have motions denied compassionate release for obese inmates who suffer from asthma. Citing the considerable precedent from this District, the Hon. Kevin McNulty recently denied a motion for compassionate release filed by an inmate at FCI Fort Dix suffering from obesity, asthma, and "gastric problems." *United States v. Minaya*, Crim. No. 17-359 (KM) (Nov. 20, 2020), slip. op. at 8. Like Defendant Wall, Minaya fell "[with]in the range of obesity," but was "not severe[ly] obesity[.]" *Id.* at 8. In addition, the court found that while asthma may increase one's risk, it was not compelling in this instance, even when considered in conjunction with the defendant's obesity. *Id.* at 9 ("[C]ourts have tended to reject claims based on mild or even severe

obesity, when unaccompanied by comorbidities such as advanced age or COPD[.]").[3] This Court agrees and will not depart from the well-reasoned opinions of its colleagues in this District and finds that Defendant Wall's medical circumstances, considered both separately and in combination, do not present extraordinary and compelling circumstances for compassionate release.[4]

Finally, "a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release." *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *5 (D.N.J. Oct. 14, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020)). In this case, § 3553(a)'s factors weigh against granting Defendant Wall's request.

First, Wall has a significant, albeit non-violent, criminal record of trafficking drugs. *See* PSR ¶¶ 180, 187, 188, 189. Second, Defendant Wall's sentencing included a significant variance. *See* 18 U.S.C. 3553(a)(6). Granting early release would not reflect the seriousness of his offense and would not adequately deter similar conduct in the

---

[3] Notably, the caselaw considers the risks associated with housing in a prison setting, not a halfway house. Wall's housing circumstances present a diminished risk. This factor when coupled with Wall's marginal comorbidities undermines the necessity for release.

[4] *Id.* (citing *United States v. Cherry*, No. CR 09-715 (SDW), 2020 WL 5868800, at *2 (D.N.J. Oct. 2, 2020) (BMI ranging from 30 to 33, but no evidence of other health problems, inability to lose weight, inadequate health care, or diminished ability to provide self-care); *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *3–5 (D.N.J. July 13, 2020) (finding that defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," where the facility was providing adequate care); *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (denying defendant's motion for compassionate release for lack of an extraordinary and compelling reason, even though he suffered from hypertension and obesity, with a BMI of 36, because he was receiving "regular and consistent medical care"); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *1, *4 (D.N.J. June 22, 2020) (denying motion for compassionate release where defendant was 60 years old and suffered from obesity, hypertension, and other health issues); *United States v. Bleicher*, Crim. No. 19-99, 2020 WL 2744606, at *3 (D.N.J. May 27, 2020) (denying compassionate release for a defendant with a BMI of 37.7); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity, but medical records showed that Bureau of Prisons was "adequately managing [his] medical care")).

future. Even though Defendant Wall's participation in the RDAP program is commendable, his successful completion of the program gains a benefit of a modification of his housing to home confinement as early as April 2021, with a projected lead to his release on or about October 9, 2021. The Court agrees that releasing Defendant Wall now would create a sentencing disparity given his receipt of a significant variance of nearly thirty months.

As a result, the Court will deny compassionate release on this basis as well and finds that the § 3553(a) sentencing factors weigh against compassionate release. The Court therefore denies Defendant Wall's motion.

### III.    Home Confinement

Defendant Wall also moves the Court to release him from prison and transfer him to home confinement. [*See* Dkt. 26]. To the extent this motion seeks relief distinct from Defendant Wall's request for compassionate release, the Court construes this motion as a request for transfer to home confinement under 18 U.S.C. § 3624. However, "the Court has no authority to grant release or transfer to home confinement under § 3624." *United States v. Rountree*, 460 F. Supp. 3d 224, 230 (N.D.N.Y. 2020) (collecting cases); *see also* 18 U.S.C. § 3624(c)(2) (granting to the Bureau of Prisons the authority to order home confinement). As such the Court denies Defendant Wall's motion for home confinement. Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151-

52 (5th Cir. 1993). Because defendant Wall's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

### IV.     Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be **denied**.

An appropriate order shall issue.


Dated: March 3, 2021

                                              /s/   Joseph H. Rodriguez
                                            HON. JOSEPH H. RODRIGUEZ,
                                            United States District Judge